SEON P. BONAN & others[1] vs. CITY OF BOSTON & others.[2]

Suffolk. May 8, 1986. — August 21, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

Practice, Civil, Declaratory relief, Motion to dismiss, Standing. *Boston. Zoning*, Conditions, Low and moderate income housing, Planned development area. *Housing*.

In an action by the owners of certain parcels of commercial real property against municipal agencies and the operator of a hospital, in which the plaintiffs, in one claim, sought a judgment declaring the invalidity of certain provisions of the Boston Zoning Code, the judge acted prematurely in ordering judgment for the plaintiffs on that issue after a hearing on the defendants' motions to dismiss, where the defendants had as yet filed no responsive pleadings, there had been no agreement among the parties as to the facts, and no motion for summary judgment, or motion properly treatable as such, had been presented. [317]

On a claim seeking a declaration of the invalidity of art. 26 of the Boston Zoning Code, which makes certain developers responsible for a "Development Impact Project Exaction," commonly called a linkage payment, designed to increase the availability of low and moderate income housing in Boston, the plaintiffs, owners of certain parcels of commercial real property, failed to state an actual controversy entitling them to declaratory relief, where their complaint did not allege that art. 26 had an immediate and significant effect on the plaintiffs, or that the plaintiffs had been or would be substantially adversely affected by reason of the influence of art. 26 on the municipal agencies' decision making processes. [317-323]

---

[1] The complaint alleges that the various plaintiffs, which are partnerships or trusts, "either own, operate or manage properties within Charles River Park, a multi-use residential, commercial, and retail complex in the West End of Boston."

[2] The zoning commission of Boston, the Boston Redevelopment Authority, and the General Hospital Corporation, commonly known as Massachusetts General Hospital (MGH). Of the defendants only MGH has not appealed. We shall sometimes refer to the city, its zoning commission, and its redevelopment authority as the "city" in characterizing their collective position here and before the lower court.

The fact that the owners of certain parcels of commercial real property had
   standing to seek judicial review of a decision of the board of appeal of
   Boston granting zoning relief to the operator of a hospital did not confer
   on them standing to seek a declaratory judgment that art. 26 of the
   Boston Zoning Code, making certain developers responsible for a "De-
   velopment Impact Project Exaction," was invalid. [322-323]

CIVIL ACTION commenced in the Superior Court Department
on June 11, 1985.

The case was heard by *Mel L. Greenberg, J.*, on a motion
to dismiss.

The Supreme Judicial Court granted a request for direct
appellate review.

*Rudolph F. Pierce* (*Albert W. Wallis, Jane M. O'Malley,*
Assistant Corporation Counsels, *Adrienne M. Markham &
Thomas E. McDonald* with him) for the city of Boston & others.

*Robert J. Muldoon, Jr.* (*John M. Reed, David A. Guberman
& Brian C. Levey* with him) for the plaintiffs.

*Robert Laurence Bowens, James M. McCreigh & Frank I.
Smizik,* with *Susan Conner, Stuart Meck & Brian W. Blaesser*
of the District of Columbia, for Boston Linkage Action Coal-
ition, amicus curiae, submitted a brief.

*Richard M. Bluestein & Janet Steckel Lundberg* for Action
for Boston Community Development, Inc., amicus curiae, sub-
mitted a brief.

*Joel Z. Eigerman,* for Edwin N. Sidman & others, amici
curiae, submitted a brief.

*James L. Buechl,* for Greater Boston Community Develop-
ment, Inc., amicus curiae, submitted a brief.

WILKINS, J. We deal here with a declaratory judgment en-
tered in the Superior Court on April 11, 1986, ruling invalid
art. 26 of the Boston Zoning Code, which makes certain de-
velopers responsible for a "Development Impact Project Exac-
tion," commonly known as a linkage payment, designed to
increase the availability of low and moderate income housing
in Boston. The city's appeal challenges the Superior Court

judge's determination that, on the record before him, the plaintiffs were entitled to entry of a judgment declaring art. 26 invalid.

We conclude that the plaintiffs have not demonstrated that they were entitled to a ruling on the validity of art. 26. We therefore reverse the judgment as to the appellants, the city defendants. Unless the plaintiffs seasonably amend their complaint, it should be dismissed as to the claim that art. 26 is a nullity. We do not reach the merits of the judge's conclusion that the city lacked statutory authority to impose development impact project exactions.

The judge heard the case on the defendants' motions to dismiss the complaint. Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974). He allowed the motions as to various claims not challenging the validity of art. 26.[3] He then went on to decide the substantive question of the city's statutory authority to adopt art. 26. The defendants had not yet filed answers; there was no agreement as to the facts; nor had a motion for summary judgment been filed. Although we favor the prompt disposition of litigated matters, entry of final judgment upon denial of a motion to dismiss, in the absence of an agreement among the parties, cannot be justified as an appropriate practice.[4] The judge in effect foreclosed the defendants from asserting affirmative defenses, from contesting the plaintiffs' allegations of fact, and from alleging and proving other facts bearing on the contested issues of law. For these reasons alone, the entry of a judgment dispositive of the art. 26 issue was premature. See *School Comm. of New Bedford* v. *Commissioner of Educ.*, 349 Mass. 410, 412 (1965). We proceed then to consider whether the judge erred in not allowing the city's motion to dismiss as to the claim that art. 26 is a nullity.

The plaintiffs argue that the exaction requirement is both an unlawful condition of zoning approval and an unauthorized tax beyond the authority of the zoning commission of Boston to adopt. They suggest in their brief that a judgment declaring

[3] We are not concerned in this appeal with those theories of the plaintiffs' case that the judge rejected.

[4] Nothing in the record indicates that the judge treated (or could properly have treated) the motions to dismiss as motions for summary judgment. Mass. R. Civ. P. 12 (b).

rights under G. L. c. 231A (1984 ed.) is appropriate here, "where the illegality of Article 26 appears as a matter of law, and there are no material, disputed facts." Our discussion of the background of this case and its procedural development will demonstrate, to the contrary, that the plaintiffs have not even alleged facts showing an actual controversy entitling them to a declaratory judgment. Because the plaintiffs fall short of demonstrating that they are entitled to any declaration of rights, this court need not reach the question of the legality of art. 26, and the motion to dismiss should have been allowed as to the claim that art. 26 is a nullity.

In March, 1982, the zoning commission of Boston (zoning commission), purportedly acting pursuant to its authority under St. 1956, c. 665, §§ 1 and 2, as amended by St. 1974, c. 669, §§ 1, 2, approved MGH's application under § 3-1A of the Boston Zoning Code for designation of its property as a planned development area. Previously, the Boston Redevelopment Authority (BRA) had held a public hearing and had recommended zoning commission approval of MGH's application. The zoning commission's approval amended the city's zoning map so as to make possible, on special exception from the board of appeal, a greater density of use and less onerous dimensional restrictions than otherwise provided under the zoning code for the zoning district in which the MGH property lies.[5] In June, 1984, MGH sought zoning commission approval of an amended development plan which, the complaint alleges, contemplated the demolition of various buildings and the construction of high-rise towers along Charles Street. The BRA approved this revision of the 1982 plan, and on August 1, 1984, the zoning commission approved the amendment of the 1982 plan.[6]

---

[5] For example, approval of the plan increased the maximum floor area ratio from 4.0 under the zoning code for this zoning district (H-4) to 4.26.

Although designation of a planned development area does not authorize construction and use without regard for the zoning restrictions applicable in the zoning district, under art. 6A of the Boston Zoning Code deviation from zoning norms may be obtained from the zoning board of appeal for a planned development area by way of exception rather than by meeting the more stringent requirements of a variance.

[6] Among the changes was an increase to 5.13 in the maximum floor area ratio.

What we have just described is important in this appeal primarily because the plaintiffs allege that the zoning commission's 1984 action was improperly influenced by the linkage requirement set forth in art. 26 of the zoning code. Section 26-3 of art. 26, which the zoning commission adopted in December, 1983, provides that no person shall be granted "a variance, conditional use permit, exception, or zoning map or text amendment for a Development Impact Project"[7] unless certain conditions are met. One condition is that the applicant shall have entered into an agreement to be responsible for a "Development Impact Project Exaction" of $5 for each square foot of gross floor area in the project in excess of 100,000 square feet.[8]

The complaint asserts that the city lacked authority under its special zoning enabling legislation (St. 1956, c. 665) to adopt art. 26 and, therefore, that art. 26 is a nullity.[9]

---

[7] Section 26-2 defines "Development Impact Project." In general, it is a development for specified nonresidential uses involving a gross floor area (exclusive of accessory parking garage space) of more than 100,000 square feet.

[8] Section 26-2(3) defines a "Development Impact Project Exaction" as the payment by the project applicant of a sum of money to a charitable trust administering the funds (Housing Payment Exaction) or the creation by the project applicant of housing units for low and moderate income residents of Boston costing at least as much as the appropriate Housing Payment Exaction (Housing Creation Exaction). A Housing Payment Exaction is to be paid in twelve equal, annual instalments, the first of which is due on the earlier of (a) the issuance of a certificate of occupancy for the project building or (b) twenty-four months after the issuance of the building permit.

The new construction is alleged to approximate 835,000 square feet. The Housing Payment Exaction would exceed $3,600,000 ($5 x 735,000).

[9] The parties agree that The Zoning Act, G. L. c. 40A, does not appy to Boston. See *Emerson College* v. *Boston,* 393 Mass. 303, 308-309 (1984). Section 9 of G. L. c. 40A, as amended through St. 1985, c. 637, § 3 (effective March 23, 1986), expressly allows zoning ordinances and by-laws which authorize the granting of special permits allowing "increases in the permissible density of population or intensity of a particular use in a proposed development," if the applicant provides some stated public benefit, including "housing for persons of low or moderate income."

In addition, and of particular significance to our consideration whether the plaintiffs are entitled to declaratory relief in this matter, the complaint alleges that "the introduction of 'linkage' requirements deprives the plaintiffs of their rights to a fair hearing on the merits of the relief sought, free of the extraneous influence on public agencies of the receipt of substantial monies for city-sponsored projects." The complaint further alleges that there is an actual controversy between the plaintiffs and the defendants as to whether the zoning commission had authority to adopt art. 26 and "whether the 'linkage' provisions in Article 26 amount to an unconstitutional infringement of the plaintiff[s]' rights to an administrative zoning process free of the influence which those who request zoning relief, such as MGH, have by virtue of their ability to contribute large sums of money to unrelated projects sponsored by the City." By these allegations the plaintiffs seek to demonstrate that there is an "actual controversy" within the meaning of the words in G. L. c. 231A, § 1 (1984 ed.), entitling them to a declaration that art. 26 is unlawful and that the zoning commission's approval of MGH's 1984 plan is invalid.

The complaint, however, does not "specifically set forth" (G. L. c. 231A, § 1) an actual controversy warranting the immediate entry of a judgment declaring art. 26 a nullity. It is not sufficient for the purposes of establishing an actual controversy for a plaintiff simply to find a defendant who disagrees on some point of law. See *Pratt* v. *Boston,* 396 Mass. 37, 43 (1985). A plaintiff must have standing, a definite interest in the matters in contention in the sense that his rights will be significantly affected by a resolution of the contested point. See *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.,* 373 Mass. 290, 292-293 (1977); *School Comm. of Cambridge* v. *Superintendent of Schools of Cambridge,* 320 Mass. 516, 518 (1946).

The complaint does not show that art. 26 has an immediate and significant effect on the plaintiffs. The plaintiffs do not allege that they wish to use their land in a way that will bring art. 26 and its exaction requirements to bear on them. The only effect that the plaintiffs assert art. 26 has had on them is

that MGH was able to obtain approval of its 1984 development plans because the "extraneous influence" of art. 26 on the decision making process denied the plaintiffs "a fair hearing on the merits of the relief sought."

These allegations are inadequate to justify allowance of declaratory relief concerning the lawfulness of art. 26. To the extent that the plaintiffs allege that, as a matter of law, the existence of art. 26 pervasively and irredeemably corrupts the zoning commission's favorable decisions on every application covered by art. 26, we reject the claim. The fact that a particular decision by a municipal agency will benefit the municipality, by providing employment or reasonably priced housing to its residents or by generating additional revenue for it in one way or other, does not invalidate that decision as a matter of law. If the plaintiffs contend that, due to particular circumstances of its 1984 decision making process, the zoning commission was in fact improperly influenced in favor of MGH, the facts alleged are not sufficient to present such an issue specifically (*Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction,* 382 Mass. 527, 531 [1981]), and, therefore, are inadequate to overcome the presumption of proper conduct by public officials (see *LaPointe* v. *License Bd. of Worcester,* 389 Mass. 454, 459 [1983]; *Robie* v. *Massachusetts Turnpike Auth.,* 347 Mass. 715, 725 [1964]). Even if the allegations were sufficient to allege an actual controversy specifically, at most they would present an issue for determination on a factual record, and not one for resolution on a motion to dismiss. See *Poremba* v. *Springfield,* 354 Mass. 432, 434 (1968).

In particular circumstances, the existence of a potentially distracting, irrelevant influence on a public agency's decision making process may cast doubt on the fairness of the process and warrant careful judicial scrutiny. Here, however, the plaintiffs have not alleged facts warranting such scrutiny. Unless and until the plaintiffs make such allegations and prove them, they will not have established an actual controversy with any defendant concerning the lawfulness of art. 26. Article 26 may or may not be within the authority of the city to adopt, but that is not a question on which the plaintiffs are entitled to an

answer until they can demonstrate that they have been or will be substantially, adversely affected by reason of the influence of art. 26 on the zoning commission's treatment of MGH's 1984 development plan.

The judge recognized that, at the time the complaint was filed in June, 1985, the question of the plaintiffs' standing to obtain a judgment declaring art. 26 invalid was "a valid and complicated one." He concluded, however, that a decision of the zoning board of appeal in November, 1985, endorsing the findings of the BRA and the zoning commission had "mooted the alleged deficiencies in plaintiffs' standing." That decision, which granted exceptions from certain zoning restrictions so that MGH could carry out its area development plan, was not and, of course, could not have been mentioned in the complaint. The city does not contest the motion judge's authority to acknowledge the board of appeal's decision, and we do not pass on whether there was some theory by which the judge could do so. Certainly the plaintiffs may be persons aggrieved by the board of appeals's decision granting exceptions to MGH. If they are, they are entitled to obtain judicial review of that decision pursuant to St. 1956, c. 665, § 12. The fact, however, that the plaintiffs are entitled to seek judicial review of the board of appeal's decision does not, as the motion judge stated, assure the plaintiffs of standing and provide the court with "jurisdiction" over this challenge. The board of appeal's decision did not change the circumstances relevant to the plaintiffs' standing to challenge the validity of art. 26 in this proceeding. The plaintiffs would be entitled to declaratory relief concerning art. 26 only on a showing that they were injured or threatened with injury because of its existence.

We conclude, therefore, that the complaint should have been dismissed, in the respect before us on appeal, because of the plaintiffs' failure to allege an actual controversy requiring the entry of a declaratory judgment. The complaint does not specifically allege an actual controversy. Article 26 did not, as a matter of law, taint the zoning commission's approval of the planned development area. The complaint does not allege sufficient facts to support a claim that the zoning commission's

decision was improperly influenced because a city agency would obtain more than $3,600,000 for low and moderate income housing if MGH's project went forward. If the plaintiffs wish to challenge the zoning commission's 1984 decision as in fact tainted by the influence of art. 26, they shall have thirty days from the filing of the rescript in the Superior Court to move to amend their complaint to make specific allegations in support of such a claim.[10] Otherwise, judgment shall be entered dismissing the complaint as to the city defendants.

Two matters of likely concern are not resolved by our disposition of this appeal. One is the unanswered question of the legality of art. 26 on which the motion judge opined. We decline to engage now in a discussion of this issue which has not been properly presented for decision in this case. Indeed, there may be material facts not before us that bear on the argument that art. 26 is unlawful. Asserted omissions in the statutory authority of the city's zoning commission to adopt art. 26 may be cured by legislation, certainly more promptly and perhaps more fully than by litigation.

The other unresolved question is what, if anything, should happen to the judgment as it applies to MGH, which has not appealed. The plaintiffs appear to have lacked standing to obtain declaratory relief against MGH to the same extent that they lacked standing to obtain relief against the city defendants. MGH has taken the position that it prevailed in the trial court on all issues that directly affected the subject zoning change.

---

[10] The complaint would have to support the claim that but for the influence of art. 26 the zoning commission would not have approved the planned development area by alleging specifically, that is, with supporting facts, that members of the commission, in sufficient numbers to influence the result, would have voted against approval of the planned development area if the city were not to receive funds under art. 26. In that situation the plaintiffs would present an actual controversy concerning the lawfulness of art. 26 which, if proven, would entitle them to declaratory relief.

It should be noted that there is no prescribed statutory procedure for judicial review of the zoning commission's approval. Therefore, unlike a challenge to the decision of a permit granting authority (see *Iodice* v. *Newton,* 397 Mass. 329, 334 [1986]), there is no statutory appeal process that the plaintiffs were obliged to pursue seasonably, and thus this action is not one in which the plaintiffs are seeking to use a request for declaratory relief to circumvent a statutory appeal process.

This conclusion may not be correct. The judgment, in addition to declaring art. 26 a nullity, stated "that so long as the zoning change secured by [MGH] is contingent upon the housing payment exaction, it cannot stand." At the very least, that language casts a shadow over MGH's authorization to proceed with its project. MGH may be well advised to seek relief from judgment by filing a motion under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).

The judgment is vacated as to the city defendants. Subject to the plantiffs' timely amendment of their complaint, as discussed above, judgment shall be entered dismissing the complaint as to the city defendants.

*So ordered.*